UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                           :
 PAMELA GELLER,                            :
                                           :
                              Plaintiff,   :        20cv3566 (DLC)
                                           :
                  -v-                      :        OPINION AND ORDER
                                           :
 BILL DE BLASIO, individually and in       :
 his capacity as Mayor, City of New        :
 York, New York, and DERMOT SHEA,          :
 individually and in his capacity as       :
 Police Commissioner, City of New York,    :
 New York,                                 :
                                           :
                             Defendants.   :
                                           :
----------------------------------------- X

APPEARANCES

For plaintiff:
David Eliezer Yerushalmi
American Freedom Law Center
640 Eastern Parkway, Ste. #4C
Brooklyn, NY 11213
(646) 262-0500

For defendants:
Aimee Kara Lulick
Glenne Ellen Fucci
New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-2369


DENISE COTE, District Judge:

     On May 7, 2020, plaintiff Pamela Geller filed this action

against New York City Mayor Bill de Blasio ("Mayor de Blasio")

and New York City Police Commissioner Dermot Shea ("Commissioner

Shea") (collectively, the "City").  On May 12, the plaintiff

moved for a temporary restraining order and preliminary

injunction to enjoin the City from enforcing an Executive Order

of March 25, 2020 and its restriction on non-essential

gatherings (the "March 25 Executive Order").  The plaintiff

argues that the restriction on gatherings violates her First

Amendment right to freedom of speech.  As explained at the oral

argument on May 15 and for the reasons that follow, the May 12

motion for a temporary restraining order is denied.

## Background

New York State (the "State") announced the first known case

of COVID-19 in New York City (the "City") on March 1, 2020.  On

March 11, the World Health Organization characterized COVID-19

as a pandemic.  On March 12, Mayor de Blasio declared a state of

emergency in the City.  As the novel coronavirus continued to

spread, on March 25, the Mayor issued the Executive Order that

is the subject of this litigation.

The Executive Order is brief.  It directed all businesses

to utilize telecommuting to the maximum extent possible.  As

most relevant to this lawsuit, it provides

> In order to avoid the mass congregation of people in
> public places and to reduce the opportunity for the
> spread of COVID-19 any non-essential gathering of
> individuals of any size for any reason shall be
> cancelled or postponed.

As noted in the March 25 Executive Order, this policy was announced "because of the propensity of the virus to spread person-to-person."

At a press conference held on May 4, Mayor de Blasio provided a status report on the impact of the pandemic on the City.  As he explained, there had been progress in confronting the virus, but serious challenges remained.  He reported that fifty-six hospitals from all over the City have been involved in responding to the pandemic.  In the City's public hospitals, for instance, the daily number of people in intensive care units ("ICUs") for suspected COVID-19 had been reduced to 632 from 645 and remained at about twice their typical level.  He explained that summonses would be issued to people in any substantial gathering in every kind of neighborhood.  He added that beaches, which traditionally open on Memorial Day, would not be opening then or "anytime soon."  He added that there were still too many new cases of infection to open small businesses.

The plaintiff emphasizes one exchange between Commissioner Shea and a reporter, who asked whether the City had a "policy as to how to approach . . . protests with maintaining freedom of speech, but at the same time maintaining the social distancing?" In response, Commissioner Shea explained that protests should not be "taking place in the middle of a pandemic by gathering outside and putting people at risk."  Mayor de Blasio confirmed,

3

"people who want to make their voices heard, there's plenty of ways to do it without gathering in person."  He stated that people should "use all the other tools [they] have to get [their] point across but avoid anything that might put other people in harm's way."

On May 7, the plaintiff initiated this action, alleging that the March 25 Executive Order and its restrictions on non-essential gatherings violates her First Amendment rights by preventing her from leading a gathering of individuals on City streets to protest the executive orders issued by Mayor de Blasio throughout the pandemic, as well as allegedly antisemitic remarks made by the Mayor in late April.  On May 12, the plaintiff filed a motion for a temporary restraining order seeking to enjoin enforcement of the gatherings-ban provided for in the March 25 Executive Order.  In support of her motion, the plaintiff submitted executive orders issued by Mayor de Blasio from March 12 through May 9, a transcript of the May 4 press conference, and a declaration of the plaintiff.

Also on May 12, the Court ordered the City to submit its opposition by May 14.  In light of the ongoing public health crisis and the dangers of person-to-person spread of COVID-19, the Court scheduled a hearing on the plaintiff's motion for a temporary restraining order to proceed as a videoconference on May 15.

On May 14, the City filed its opposition brief, which was supported by a declaration by Demetre Daskalakis, M.D., the Deputy Commissioner of the Division of Disease Control of the City's Department of Health and Mental Hygiene.  The City also submitted State and City executive orders, as well as City statistics on COVID-19, and a May 12 Morbidity and Mortality Weekly Report published by the Centers for Disease Control and Prevention ("CDC") that details the dangers of person-to-person spread of COVID-19, as observed at a choir practice held in Skagit County, Washington on March 17.

As of May 15, the City had reported 187,848 positive cases of COVID-19, as well as 49,580 hospitalizations, 15,422 confirmed deaths, and 5,054 probable deaths stemming from the novel virus.[1]  In the week prior to May 15, 500 to 1,500 new cases of COVID-19 and roughly 50 to 250 new hospitalizations due to COVID-19 were identified each day.  Daily deaths still hovered between 25 to 100.  While certain parts of New York State begin to open, New York City still has met only four of

---

[1] The Court may take judicial notice of "relevant matters of public record."  See Giraldo v. Kessler, 694 F.3d 161, 163 (2d Cir. 2012); see also Rule 201(b), Fed. R. Civ. P. (permitting judicial notice of facts "not subject to reasonable dispute"). Throughout this Opinion, the Court relies on public health statistics reported by the City.  See COVID-19: Data, New York City Health, available at https://www1.nyc.gov/site/doh/covid/covid-19-data.page (last accessed May 18, 2020).

the seven metrics that Governor Andrew Cuomo has required to begin phase one of the State's regional phased reopening plan.[2]

It is with this backdrop that the Court heard arguments on May 15,[3] and, at the end of the hearing, announced that it would deny the plaintiff's May 12 motion for a temporary restraining order.  The parties then requested that the Court enter final judgment for the defendants after it issued this Opinion explaining its reasons for the denial.

## Discussion

The standard for determining whether to grant a motion for a temporary restraining order is the same as used in evaluating a motion for a preliminary injunction.[4]  Local 1814, Int'l Longshoreman's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n, 965, F.2d 1224, 1228 (2d Cir. 1992).  When a party seeks to enjoin government action of this kind, he "must establish that he is

---

[2] Regional Monitoring Dashboard, New York State, available at https://forward.ny.gov/regional-monitoring-dashboard (last accessed May 18, 2020).

[3] Prior to the hearing, the Court granted the plaintiff's May 15 request to file a reply brief and supplemental declaration of the plaintiff in support of her motion for a temporary restraining order.

[4] Although the City does not contest that the plaintiff has standing to bring this action, "the court has an independent obligation to assure that standing exists."  Summers v. Earth Island Inst., 555 U.S. 488, 499 (2009).  The Court finds that the plaintiff has satisfied the "relaxed standing . . . rules" that govern civil pre-enforcement challenges.  Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 689, 690 (2d Cir. 2013).

likely to succeed on the merits, that he is likely to suffer
irreparable harm in the absence of preliminary relief, that the
balance of equities tips in his favor, and that an injunction is
in the public interest."  Trump v. Deutsche Bank AG, 943 F.3d
627, 640 (2d Cir. 2019) (citing Winter v. NRDC, Inc., 555 U.S.
7, 20 (2008)) (determining that Winter's balance of equities and
public interest factors apply at least where national security
is concerned); id. at 637 (noting that the likelihood of
success, not serious-questions, standard applies when a
plaintiff attempts to preliminarily enjoin government action
pursuant to a statutory or regulatory scheme).

Although a showing of irreparable harm is often considered
the "single most important prerequisite for the issuance of a
preliminary injunction," Faiveley Transp. Malmo AB v. Wabtec
Corp., 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted),
"[c]onsideration of the merits is virtually indispensable in the
First Amendment context, where the likelihood of success on the
merits is the dominant, if not the dispositive, factor."  N.Y.
Progress and Prot. PAC v. Walsh, 733 F.3d 483, 488 (2d Cir.
2013).

This Opinion therefore turns to the plaintiff's likelihood
of success on the merits of her First Amendment claim.  The
plaintiff contends that the March 25 Executive Order violates
the First Amendment by preventing her from leading a gathering

of individuals on City streets to protest the executive orders

issued by Mayor de Blasio throughout the pandemic, as well as

allegedly antisemitic remarks made by the Mayor in late April.

"The pertinent Clause of the First Amendment, which applies

to the states through the Fourteenth Amendment . . . , provides

that 'Congress shall make no law abridging the freedom of

speech." Hobbs v. Cty. of Westchester, 397 F.3d 133, 148 (2d

Cir. 2005) (citing U.S. Const. amend. I).  "Speech on matters of

public concern is at the heart of the First Amendment's

protection" and is "entitled to special protection." Snyder v.

Phelps, 562 U.S. 443, 451-52 (2011) (citation omitted).

But, this protection is not absolute.  Over a century ago,

the U.S. Supreme Court taught that "a community has the right to

protect itself against an epidemic of disease which threatens

its members." Jacobson v. Commonwealth of Massachusetts, 197

U.S. 11, 27 (1905).  In such times, judicial scrutiny is

reserved for a measure that "has no real or substantial relation

to" the object of protecting "the public health, the public

morals, or the public safety," or is "beyond all question, a

plain, palpable invasion of rights secured by the fundamental

law." Id. at 31.  As explained by the Supreme Court, a "court

would usurp the functions of another branch of government if it

adjudged, as matter of law, that the mode adopted under the

sanction of the state, to protect the people at large was

arbitrary, and not justified by the necessities of the case."
Id. at 27-28.  Given the COVID-19 pandemic, and the City's place
as an epicenter of that pandemic in this country, it is
necessary to review the restriction expressed in the March 25
Executive Order through that lens.

In a forum traditionally open to the public, such as a
public street or park, the government's authority to regulate
speech or expressive conduct is typically "sharply
circumscribed."  Hobbs, 397 F.3d at 148.  "A prior restraint on
speech, i.e., any regulation that gives public officials the
power to deny use of a forum in advance of actual expression . .
. bears a heavy presumption against its constitutional
validity."  Id. (citation omitted).  Such a regulation deserves
strict scrutiny when it regulates speech on the basis of
content.  Id. at 149.  But, when a regulation is content-
neutral, the "less stringent test" of intermediate scrutiny
applies.  Id.

A regulation is content-neutral if it "serves purposes
unrelated to the content of expression . . . even if it has an
incidental effect on some speakers or messages but not others."
Id. at 150 (citation omitted).  "Thus, a regulation that targets
only potentially harmful secondary effects of speech, rather
than the contents of the speech itself or the listener's
agreement or disagreement with those contents, is deemed

content-neutral."  Id.  "A restriction designed to serve a

governmental need to protect the security of the audience

targets the speech's secondary, rather than its primary,

effect."  Id. (citation omitted).

    Under the intermediate scrutiny standard that applies to

content-neutral regulations, the government may "limit the time,

place, or manner of expression -- whether oral, written, or

symbolized by conduct -- even in a public forum," so long as the

measure is "reasonable," "narrowly tailored to serve a

significant governmental interest, and leave[s] open ample

alternative channels for communication of the information."  Id.

at 149 (citation omitted).  "The narrow tailoring requirement is

satisfied so long as the regulation promotes a substantial

governmental interest that would be achieved less effectively

absent the regulation."  Id.  Thus, a restriction "need not be

the least restrictive or least intrusive means of doing so."

Id. (citation omitted).

    The March 25 Executive Order is content-neutral.  It bans

"any non-essential gathering of individuals of any size for any

reason."  It does not target the contents of the speech itself

or the listener's agreement or disagreement with those contents.

Instead, it targets the harmful secondary effects of public

gathering -- the spread of a novel virus for which there

currently is no cure or effective treatment.

Because the March 25 Executive Order is content-neutral, intermediate scrutiny applies.  While the plaintiff acknowledges the significance of the governmental interest, it bears repeating what is at stake.  Through the March 25 Executive Order, the City seeks to slow the spread of a virus that has hospitalized and killed tens of thousands of New Yorkers and infected hundreds of thousands more -- in less than three months' time.

Given the severity of the public health crisis, the City has taken measures that are reasonable and narrowly tailored in temporarily prohibiting public gatherings.  While a measure restricting all public group activity may not likely be found narrowly tailored in ordinary times, these times are extraordinary.  The City has demonstrated that the scientific and medical communities believe that preventing in-person gatherings is crucial to any strategy of containment.  As the City has argued, the declining rates of infection and death among New Yorkers is evidence not that the gatherings ban is overly broad, but rather that it is effective.  As there is no evidence to suggest that the City has misunderstood the dangers of person-to-person spread of COVID-19, the Court declines to second guess the City's measure that clearly seeks to mitigate this risk.

11

The plaintiff is wrong that the City's ban on non-essential gatherings is not narrowly tailored because pedestrians and cyclists may exercise on City streets through an "Open Streets Initiative" that has closed certain streets to non-essential vehicular traffic.  As is clear from the text of the March 25 Executive Order and affirmed by the City at the May 15 hearing, this program does not permit gatherings of pedestrians or cyclists; it only authorizes individuals to leave their dwellings and walk, jog or cycle.  In the same way, the March 25 Executive Order does not prohibit an individual from protesting on City streets alone.

Of course, it is true, as the plaintiff argues, that a single person protesting in public is not a perfect substitute for public group protests.  Alternative channels for communication and political protest, however, remain open.  The plaintiff is free to express her discontent online, through media, and by protesting in public on her own.  For now, these are acceptable alternatives to public group protests.

The March 25 Executive Order's ban on non-essential gatherings represents just one of the many ways in which our ordinary way of life has been suspended to protect public health and safety in this historic time.  There can be no doubt that combatting the spread of COVID-19 has come at a high cost.

Indeed, it has brought to a halt much of the economic activity

in the City.  Nonetheless,

> in every well-ordered society charged with the duty of
> conserving the safety of its members the rights of the
> individual in respect of his liberty may at times,
> under the pressure of great dangers, be subjected to
> such restraint, to be enforced by reasonable
> regulations, as the safety of the general public may
> demand.

Jacobson, 197 U.S. at 29.  This is one such time.

Because the plaintiff is not likely to succeed on the

merits of her First Amendment claim, the Court declines to

consider the other factors that a plaintiff must meet in seeking

a temporary restraining order.  See Hsu v. Roslyn Union Free

School Dist. No. 3, 85 F.3d 839, 853 (2d Cir. 1996) (noting that

in the First Amendment context a finding of irreparable harm is

contingent on a plaintiff's likelihood of success on the

merits).

## Conclusion

The plaintiff's May 12, 2020 motion for a temporary

restraining order is denied.  As requested by the parties at the

May 15 hearing, the Clerk of Court shall enter judgment for the

defendants and close this case.


Dated:    New York, New York
          May 18, 2020

                                    _____
                                    DENISE COTE
                                    United States District Judge


13